**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **GRACE LEE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **12-cv-2638-JAR-DJW** |
| ) | |
| **KANSAS STATE UNIVERSITY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

<u>**MEMORANDUM AND ORDER**</u>

On September 28, 2012, Plaintiff Grace Lee filed a ten-count complaint against Kansas

State University ("KSU"), Dr. Carol W. Shanklin, Dr. James A. Guikema, Dr. Duane W.

Crawford, Dr. James W. Neill, Dr. Haiyan Wang, and Ms. Heather Reed (Defendants), seeking

damages related to her termination from a graduate teaching assistant (GTA) position and from

her graduate studies in statistics at KSU.  Her claims include both state law claims under Kansas

law and several alleged constitutional violations under 42 U.S.C. § 1983.  On November 6, 2012,

Defendants filed a Motion to Dismiss (Doc. 12), pursuant to Federal Rule of Civil Procedure

12(b)(6) and Rule 12(b)(1), which is currently before the Court.  The motion is fully briefed and

the Court is prepared to rule.  As described more fully below, the Court grants the motion in part

and denies the motion in part.

**I. Legal Standard**

The Court evaluates Defendants' jurisdictional claim under Rule 12(b)(1).  Federal courts

are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to

exercise jurisdiction.[1]  A court lacking jurisdiction must dismiss the case, regardless of the stage

of the proceeding, when it becomes apparent that jurisdiction is lacking.[2]  The party who seeks to

invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper;[3] here,

"[P]laintiff bears the burden of showing why the case should not be dismissed."[4]  Mere

conclusory allegations of jurisdiction are not enough.[5]

Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes

one of two forms: a facial attack or a factual attack.  "First, a facial attack on the complaint's

allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In

reviewing a facial attack on the complaint, a district court must accept the allegations in the

complaint as true."[6]  "Second, a party may go beyond allegations contained in the complaint and

challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual

attack on subject matter jurisdiction, a district court may not presume the truthfulness of the

complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents,

---

[1]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage,* 58 F.3d 569, 574
(10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent.  They draw their jurisdiction
from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal
citations omitted).

[2]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[3]*Montoya*, 296 F.3d at 955.

[4]*Harms v. IRS*, 146 F. Supp. 2d 1128, 1130 (D. Kan. 2001).

[5]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir.
1999).

[6]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*,
922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[7]

The Court evaluates Defendants' non-jurisdictional arguments under Rule 12(b)(6), which provides a vehicle for a party to challenge the legal sufficiency of a claim. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[9] "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10] The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[11] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[12] Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[13]

---

[7]*Id.* at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[8]Fed. R. Civ. P. 8(a).

[9]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[10]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]*Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[13]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[14] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[15] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[16] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

## II. Factual Allegations

Plaintiff's Complaint alleges the following facts, which the Court construes in the light most favorable to Plaintiff.

Plaintiff is a citizen of The People's Republic of China and is a lawfully admitted resident alien of the United States. In brief, Plaintiff Lee was a graduate student in the Department of Statistics at KSU, but was recently dismissed from the Department of Statistics, and, subsequently, from the KSU Graduate School. Plaintiff argues she was dismissed in retaliation for filing formal grievances against her former major professor and for her communications to Defendants reporting potential academic fraud on the part of a former KSU

---

[14]*Id.*

[15]*Id.* at 679.

[16]*Id.*

[17]*Id.* at 678.

Statistics PhD student. Defendants maintain Plaintiff was dismissed for failing to make adequate academic progress, which resulted from her failure to find a replacement major professor to supervise her doctoral research after she asked to have her other major professors removed.

Plaintiff had been enrolled in the doctoral program in the Department of Statistics of the KSU Graduate School since the spring academic semester of 2006. Plaintiff had been in good academic standing during the entirety of her tenure at KSU and received several academic scholarships due to the quality of her work. Plaintiff has passed several important milestones in pursuit of her PhD in Statistics from KSU, including passing her PhD Qualifying Exam in early 2008. Additionally, Plaintiff has completed a 225-page dissertation proposal and published three papers. The Department of Statistics confirmed on January 30, 2012, that Plaintiff was on schedule to graduate with her PhD in Statistics in Spring 2013. In most PhD programs, graduate students must have a major professor who oversees their work and provides advice and guidance; Dr. Haiyan Wang served in that role for Plaintiff.

While Plaintiff was a GTA, and thus an employee of a state agency, Wang asked her to review and improve another KSU graduate student's dissertation. That student was Wang's former advisee and had already graduated from KSU with a PhD, but the student's dissertation was deficient and not acceptable by any journal. After review, Plaintiff concluded that the other student's dissertation contained multiple instances of academic fraud. Plaintiff reported the fraud to Wang, who asked her to fix the paper and did nothing to address the fraud itself. Plaintiff does not identify when this episode took place.

Beginning in August 2009, Wang sometimes exhibited abusive and unprofessional behavior toward Plaintiff Lee.

On October 5, 2011, Plaintiff filed a grievance with the Associate Vice President of the KSU Office of Research and Sponsored Programs, Dr. James A. Guikema, against Wang, requesting removal of Dr. Wang as her major professor and from the supervisory committee overseeing and advising Lee in the pursuit of her PhD. This grievance followed months of informal complaints by Plaintiff to the Head of the Department of Statistics, Dr. James W. Neill.

In response to the grievance, KSU failed to hold a hearing required by KSU Graduate School grievance policies, but instead settled on a compromise suggested by the Interim Associate Dean of the KSU College of Arts and Sciences, Dr. Joseph Aistrup. Under the compromise solution, Neill assumed a "co-major professor" role with Wang, who requested to continue as Plaintiff's major professor. Neill was to act as a mediator between Wang and Plaintiff.

Wang's abusive and unprofessional behavior toward Plaintiff continued unabated for several months, and, following consultation with the Associate Dean of the Graduate School, Dr. Duane W. Crawford, Jr., Plaintiff filed another grievance against Wang on March 18, 2012, again requesting Wang's removal as her major professor. In response, the school granted Plaintiff's request and removed Wang from her role as Plaintiff Lee's major professor and from Plaintiff Lee's supervisory committee.

Neill removed himself as Plaintiff's co-major professor on or about April 9, 2012, leaving Plaintiff without a major professor. Neill did so because he had only agreed to serve as co-major professor in an attempt to mediate between Lee and Wang. Neil maintained that he works in a different area of statistics and thus would not be an appropriate research supervisor. Before Neill was removed, Plaintiff signed a form authorizing his removal, which she later

sought to vacate. She alleges she signed the form in error, without realizing that Department Head Neill's name was on the form. She also alleges that she was misled by unspecified defendants into believing that his name was not on the form.

After Plaintiff's two major professors were removed, she was required to find another major professor in order to continue her studies. On April 19, 2012, Neill informed Plaintiff that her summer GTA position was in jeopardy if she could not locate another major professor by April 27, 2012, because GTA positions were only awarded to students making satisfactory academic progress. Plaintiff contacted every professor within the Department of Statistics in an attempt to locate another major professor, but was unable to secure a new major professor by April 27, 2012, due to the complexity of her dissertation work and the high faculty turnover in the Statistics Department. On or about April 27, 2012, Plaintiff was terminated from her summer GTA position. Although Defendants told Plaintiff that she was terminated for her lack of a major professor, many other graduate students within the Department of Statistics did not have major professors at that time.

After her dismissal from the GTA position, Plaintiff continued to seek a new major professor in the Statistics Department. Numerous professors suggested that she might have to change to a new research topic or change to a new department in order to find a new major professor. On April 30, 2012, Crawford told Plaintiff that he didn't see any alternative to Plaintiff starting her doctoral program and research anew on another topic with another major professor, which she interpreted as a penalty for her grievances against Wang. On May 1, 2012, Associate Vice President Guikema told Plaintiff that her chances of her completing her PhD in the Statistics Department were "almost down to zero" and suggested Plaintiff should explore

discussions with graduate programs outside of the Department of Statistics.

On May 4, 2012, the Associate Dean and Director of Student Life, Heather Reed, requested a meeting with Plaintiff and asked Plaintiff not to have any contact with faculty or staff at the Department of Statistics or the Graduate School. When Plaintiff met with Reed and Guikema on May 7, 2012, Guikema confirmed that Plaintiff no longer had any chances for success in continuing her PhD in the Statistics Department. Guikema told Plaintiff that Plaintiff could ask faculty members of other Graduate School departments if she could be a student in their program, but stated that staying in the Department of Statistics was not an option, because Plaintiff did not have a major professor by the April 27, 2012 deadline. Guikema told Plaintiff that Plaintiff had approximately six weeks to be accepted into a different department within the KSU Graduate School or she would be dismissed from the Graduate School entirely. The Complaint does not allege any efforts by Lee to be accepted into a different department within the KSU Graduate School.

On May 9, 2012, Plaintiff received a letter informing her that she had been recommended for termination from the Statistics graduate program for failure to find a replacement professor. On May 31, 2012, Plaintiff received a letter from Guikema informing Plaintiff that she was being dismissed from the KSU Graduate School for failure to make satisfactory progress, on the recommendation of the Statistics Department.

Plaintiff maintains that Defendants' actions against her were retaliatory, were in bad faith, and were in response to Plaintiff Lee's filing of two grievances against Dr. Wang. Plaintiff argues that her acknowledged superior academic performance at KSU's Graduate School, combined with the behavior of Defendants, demonstrate that Plaintiff Lee's dismissal was not

due to "failure to make satisfactory progress" nor any other purported academic reason.

**III. Discussion**

Plaintiff alleges ten counts in her complaint.

In Count I, Plaintiff alleges a procedural due process violation, under 42 U.S.C. § 1983. Plaintiff argues that Defendants, in their individual and official capacities, violated her procedural due process right to continue her graduate education by dismissing her from graduate school without providing adequate due process.

In Count II, Plaintiff alleges a substantive due process violation, also under 42 U.S.C. § 1983. Plaintiff argues that Defendants' dismissal, based on her alleged failure to make satisfactory academic progress, reflected poorly on Plaintiff's good name, reputation, honor and integrity. Plaintiff also argues that her dismissal from the program resulted in the taking of a constitutionally protected property interest in her continued education, in violation of her substantive due process rights, as guaranteed by the Fourteenth Amendment.

In Count III, Plaintiff alleges breach of Contract. She argues that, as an enrolled student at KSU, she had an implied contract with KSU, which included the KSU Graduate Student Handbook ("Handbook"). She alleges that she was not afforded the full due process rights in the conduct of proceedings guaranteed her by the Handbook, that the Handbook is impermissibly vague, and that, by failing to afford Plaintiff due process as per the Handbook before she was dismissed, KSU breached its duty of good faith and fair dealing.

In Count IV, Plaintiff alleges Retaliatory Discharge. Plaintiff argues that her discharge from her position as a Graduate Teaching Assistant was in retaliation for reporting her findings of academic fraud, and for her filing grievances against Wang.

In Count V, Plaintiff alleges Defendants violated her First Amendment Right of Freedom of Speech through Official Retaliation by Defendants, under 42 U.S.C. § 1983. Plaintiff argues she was discharged from her employment as a GTA and dismissed from KSU as a direct result of her protected speech as a public employee, and in direct retaliation for airing her conclusions that another student's dissertation contained academic fraud.

In Count VI, Plaintiff alleges intentional infliction of emotional distress, arguing that she has suffered extreme emotional distress as a direct result of Defendants' intentional or reckless conduct.

In Count VII, Plaintiff alleges negligent infliction of emotional distress, arguing that she has suffered qualifying physical injuries, as defined under Kansas law, as a result of Defendants' conduct, including extreme and persistent abdominal pain, directly resulting from the emotional distress caused by Defendants' negligence.

In Count VIII, Plaintiff alleges fraudulent misrepresentation, arguing that unspecified Defendants intentionally misled her into removing Neill as her major professor, leading to her dismissal from the graduate school.

In Count IX, Plaintiff alleges common law civil conspiracy, arguing that Defendants illegally conspired to dismiss Plaintiff from her PhD program. Plaintiff also alleges that Defendants engaged in several unlawful overt acts in the course of their conspiracy, including those alleged in Counts I, II, and V.

Finally, in Count X, Plaintiff alleges that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. § 1983. Plaintiff argues that Defendants engaged in an illegal conspiracy to achieve their ultimate goal of dismissing Plaintiff from her PhD program, which deprived her

of her right to free speech and ongoing education.

The Court addresses two general arguments for dismissal by Defendants before addressing the remaining counts on a count-by-count basis. Although Defendants also make overarching Kansas Judicial Review Act ("KJRA") and Kansas Tort Claims Act ("KTCA") arguments against Plaintiff's state law counts, the Court dismisses those counts on other grounds and so declines to address the KJRA and KTCA arguments.

### A. Eleventh Amendment Immunity and Qualified Immunity

The Court must address two initial matters. First, Plaintiff concedes that her claims against KSU and against the other defendants in their official capacities are barred by their Eleventh Amendment immunity.[18] This concession bars Count III, which was only alleged against KSU, and Count IV, retaliatory discharge, because only an employer (i.e. KSU) may be liable for retaliatory discharge under Kansas law.[19] The Court notes that the Eleventh Amendment immunity argument is Defendants' only 12(b)(1) argument; the Court addresses the remainder of Defendants' arguments under 12(b)(6).

Second, Defendants also argue that the constitutional claims against Defendants in their individual capacity are barred by qualified immunity. When a defendant claims qualified immunity, the plaintiff bears the "heavy two-part burden" of showing (1) the defendant's violation of a constitutional right; and (2) that the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable official would

---

[18]Doc. 19 at 10.

[19]*Rebarchek v. Farmers Co-op Elevator*, 272 Kan. 546, 562 (2001).

have known that his or her challenged conduct was illegal."[20]

The Court first addresses whether Plaintiff has alleged that Defendant violated a constitutional right. The Plaintiff here argues that she has a constitutional right to due process before she can be deprived of her property interest in her continued enrollment and graduate education, and this argument appears to be well supported by Tenth Circuit precedent. In *Goss v. Lopez,*[21] the Supreme Court held that, once provided, public education becomes "a property interest which may be protected by the Due Process Clause." The Tenth Circuit extended and expanded this right in *Gaspar v. Bruton,*[22] where the court found that "in light of *Goss . . .* where the Supreme Court recognized a property right in public school students, that certainly such a right must be recognized to have vested [where a student] paid a specific, separate fee for enrollment and attendance at [a technical] school." Tenth Circuit decisions since then have continued this trajectory and expanded it to a more generalized property interest in continuing graduate education, with a concomitant procedural due process right.[23] In light of these decisions, the Court concludes that the Tenth Circuit recognizes a constitutional right to due process before a student can be deprived of her property interest in her continued enrollment and graduate education.

---

[20]*Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007).

[21]419 U.S. 565, 574 (1975).

[22]513 F.2d 843, 850 (10th Cir. 1975) (holding that an individual's place in a post-secondary nursing program constitutes a protected property interest).

[23]*Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (graduate student had a property interest in his graduate education which entitled him to due process); *Gossett v. Oklahoma ex rel Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) (nursing student had a property right in his nursing education and was entitled to due process under the U.S. Constitution); *Byrnes v. Johnson County Cmty. Coll.*, No. 10–2690–EFM–DJW, 2011 WL 166715, at *1–*2 (D. Kan. Jan. 19, 2011) ("Defendants argue that Plaintiff has no constitutionally protected property interest in her post-secondary education, but the law is clearly otherwise.").

Defendants argue that the real alleged property interest in this case is narrower, styling it as a Kansas graduate student's interest in choosing a particular major professor or in maintaining a particular research topic. But, the Complaint alleges that Defendants forced Plaintiff out of her graduate program, not that they prevented her from choosing her own major professor or from maintaining a particular research topic. At this stage, the facts alleged by the Plaintiff support the broader property interest she proposes, a property interest in her continued graduate education.

The Court next addresses whether the infringed right at issue was clearly established at the time of the allegedly unlawful activity, such that a reasonable official would have known that his or her challenged conduct was illegal. The Court "cannot find qualified immunity wherever we have a new fact pattern."[24] The Tenth Circuit has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional."[25] "[A] general constitutional rule . . . can apply with obvious clarity to the specific conduct in question, even though [such conduct] has not previously been held unlawful."[26] In sum, the qualified immunity analysis requires that we determine whether a reasonable official would have known that the conduct at issue was unconstitutional.

Defendant argues that there is no authority that would have put Defendants clearly on notice that Lee could not be dismissed from the Graduate School for failure to make satisfactory

---

[24]*Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

[25]*Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (internal quotation marks and citation omitted).

[26]*Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006) (internal quotation marks and alteration omitted).

progress given her self-imposed lack of a major professor or refusal to consider changing her research topic, but this argument again misconstrues the nature of the constitutional right in question. Here, as the Court noted above, the right in question is the constitutional right to due process before a student can be deprived of her property interest in her continued graduate education. Based on the expansive precedent reviewed above, this right is clearly established, and a reasonable official would have known that the conduct alleged by Plaintiff was unconstitutional.

In light of the Court's ruling on Defendants' two immunity arguments, Counts I, II, V, VI, VII, VIII, IX, and X remain, but only against the individual Defendants in their individual capacities.

### B. Count I - Procedural Due Process Claim, under 42 U.S.C. § 1983

Plaintiff alleges that she was deprived of two constitutionally protected interests, her personal property right in her ongoing education and her liberty interest in her name and reputation, each of which she claims are protected by the due process clause of the Fourteenth Amendment to the Constitution.

To succeed on a procedural due process claim, an individual must prove two elements: first, that she possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and second, that she was not "afforded an appropriate level of process."[27]

 Lee claims a liberty interest as one basis for her due process claim.

> "[I]n order to present a viable liberty deprivation claim, the plaintiff
> must demonstrate more than a mere injury to reputation; due process

---

[27]*Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quotation omitted).

> requirements are not triggered unless the injury to reputation is entangled with the loss of a more tangible interest. The plaintiff is also required to demonstrate that the publication of information was false and stigmatizing. . . . [F]or a statement to be stigmatizing, a statement must allege dishonesty, stealing or some other allegation that gives rise to a badge of infamy, public scorn, or the like."[28]

In short, the statement must be false, stigmatizing, published, and coupled with a loss of a more tangible interest. Here, the Complaint does not allege that Defendants made a public statement about her. Further, the school's given reason for dismissing her, her alleged "failure to make satisfactory progress," is not stigmatizing; it does not allege dishonesty, stealing or some other allegation that gives rise to a badge of infamy, public scorn, or the like. Thus, because she failed to allege two elements of a liberty interest claim, Plaintiff cannot base her procedural due process arguments on deprivation of a liberty interest.

Nevertheless, as indicated by the Court's qualified immunity analysis, Plaintiff had a protected property interest in her ongoing education. Because Plaintiff alleges she possessed a constitutionally protected property interest such that the due process protections were applicable, the Court turns to the question of whether she successfully alleges that was afforded an inappropriate level of process before she was deprived of that property interest. Defendants argue that the claim should be dismissed, because Plaintiff was provided the minimal due process required when a school dismisses a student for academic reasons. But this argument presupposes that the dismissal was for academic reasons. Plaintiff maintains that the purported academic reasons were a pretext, and that the dismissal was actually disciplinary in nature, which would require a higher standard. The question of whether the dismissal was academic or

---

[28]*Ndefru*, 1993 WL 544563, at *5–*6. *See also Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 579 (10th Cir. 1996) (explicitly noting a publication requirement).

disciplinary is a fact question that cannot be resolved on a motion to dismiss; the facts, as alleged by Plaintiff, suggest that the dismissal may have had some disciplinary aspect. Because the nature of the dismissal cannot be resolved on a motion to dismiss, the Court will deny Defendants' motion to dismiss Count I with respect to the Defendants in their individual capacities.

### C. Count II - Substantive Due Process Claim, under 42 U.S.C. § 1983.

Plaintiff bases her substantive due process claim on her allegations that her dismissal from graduate school, based on her alleged "failure to make satisfactory progress," reflected poorly on her good name, reputation, honor and integrity. Plaintiff also argues that her dismissal constituted the kind of taking of a constitutionally protected property interest that amounts to a substantive due process violation.

"Government action violates substantive due process when it either deprives an individual of a fundamental right or interest or shocks the judicial conscience."[29] In this case, Plaintiff argues the second approach, that Defendants acted in a manner shocking to the judicial conscience. To state such a claim, a plaintiff must allege government action that is "arbitrary and unrestrained by the established principles of private right and distributive justice."[30] "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."[31] "[A] plaintiff must do more than show that the government actor intentionally or recklessly

---

[29]*Heublein v. Wefald*, 784 F. Supp. 2d 1186, 1195 (D. Kan. 2011).

[30]*Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008) (internal quotations omitted).

[31]*Id.*

caused injury to the plaintiff by abusing or misusing government power."[32]  "Plaintiffs must show a 'high level of outrageousness' and a magnitude of potential or actual harm which is truly conscience shocking."[33]

Here, Plaintiff alleges in the complaint that her dismissal was arbitrary and capricious and sufficient to shock the conscience of a reasonable person.  She elaborates in her response, arguing that Neill's actions in having himself removed from the advisory committee should shock the conscience of this Court and that her dismissal as a whole shocks the conscience.  To the extent that her dismissal lacked adequate process, Plaintiff may pursue her procedural due process claim, discussed above.  But more broadly, these alleged transgressions do not rise to a level of outrageousness that shocks the conscience.  A substantive due process violation requires more than an ordinary tort, and the Court is aware of its obligation not to convert ordinary state torts into constitutional claims.  Because these allegations do not exhibit the high level of outrageousness necessary to shock the conscience of federal judges, Defendants' motion to dismiss the second claim is granted.[34]

### D.  Count V - Freedom of Speech Claim, under 42 U.S.C. § 1983.

Plaintiff argues that Defendants dismissed her from graduate school in retaliation for her statements to her advisor and other Defendants concerning academic fraud in another student's dissertation.  Defendants make three arguments asking the Court to dismiss Plaintiff's fifth claim.  First, Defendants argue that Plaintiff was acting as a public employee when she reported

---

[32]*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998).

[33]*Taylor v. Byers*, No. 10–1383–KHV, 2011 WL 3704736, *4 (D. Kan. Aug. 23, 2011) (citing *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)).

[34]*Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002).

the academic misconduct, and that such speech is not constitutionally protected.  Second, Defendants argue that Plaintiff was not speaking on a matter of public concern, but rather was motivated by personal concerns, such that her employment-related speech was not protected.  Third, Defendants argue that the temporal gap between the speech and the alleged retaliation was too long to allow the Court to infer any kind of retaliation.  Because the Court agrees with Defendants' first argument, the Court does not address the other two arguments.

In *Garcetti v. Ceballos,* the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[35]  Although Plaintiff now argues that she made her comments in her individual capacity, her verified complaint clearly describes "Plaintiff Lee's oral and written communications to Dr. Wang, Department Head Neill and Associate Vice President Guikema, *undertaken in Plaintiff Lee's role as a scholar and public employee of KSU.*"[36]  She later reiterates that the communications were "speech as a public employee."[37]  In light of Plaintiff's own statements, the Court finds Plaintiff alleged that she was making statements pursuant to her official duties, and thus her communications are not protected by the Constitution.  For this reason, Plaintiff's fifth claim is dismissed.

### E.  Count VI  - Intentional Infliction of Emotional Distress Claim.

Plaintiff argues that she has suffered extreme emotional distress as a direct result of

---

[35]547 U.S. 410, 421 (2006).

[36]Doc. 1 at 27 (emphasis added).

[37]*Id.*

Defendants' intentional or reckless conduct.

> Intentional infliction of emotional distress comprises four elements: (1) the challenged conduct was intentional or performed with reckless disregard for the plaintiff; (2) the conduct was extreme and outrageous; (3) a causal connection exists between the conduct and the plaintiff's mental distress; (4) the plaintiff's mental distress was extreme and severe. . . . Conduct is extreme and outrageous when it goes beyond the bounds of decency and is utterly intolerable in a civilized society.[38]

Defendants argue that the conduct of the university officials was not extreme or outrageous and that the Complaint fails to plead facts sufficient to show that any distress suffered was severe, extreme and continuous enough to support the tort.

Broadly, the Court agrees that Defendants' conduct is not extreme or outrageous enough to support a claim of intentional infliction of emotional distress. Based on Plaintiff's own allegations, she requested removal of her major professor and had some difficulty finding another professor in her own department to supervise her research. She alleges that Neill engineered his removal as her second major professor, but it is clear from the allegations that he was not willing to continue serving in that role regardless of the method of his removal. Although Defendants may not have provided sufficient process and may not have provided Plaintiff with sufficient time to find a new major professor before terminating her, and although this course of action may have been motivated by Defendants' desire to discipline Plaintiff, such a course of conduct is not "utterly intolerable in a civilized society."

Moreover, Plaintiff's allegations do not support a finding that she suffered extreme and severe mental distress. Her complaint states states that "Plaintiff has suffered extreme and

---

[38]*Southern Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp. 2d 1257, 1263–64 (D. Kan. 2010) (quotations omitted).

severe mental distress"[39] and that "Plaintiff has suffered emotional distress to such an extreme degree that the law must intervene because the distress inflicted has been so severe that no reasonable person should be expected to endure it."[40]  These statements do not allege facts showing sufficient distress so much as merely state the legal conclusion that Plaintiff has suffered sufficient distress.  Such conclusory statements are insufficient to support a claim.  For these reasons, the Court will grant Defendants' motion to dismiss with respect to Count VI.

### F. Count VII - Negligent Infliction of Emotional Distress Claim.

Plaintiff also alleges that Defendants negligently caused her emotional distress.  Under Kansas law, "[t]o sustain a claim for negligent infliction of emotional distress, the plaintiff must establish that the conduct complained of was accompanied by, or resulted in, immediate physical injury."[41]  "Physical symptoms of emotional distress such as headaches, insomnia, and general physical upset are insufficient to state a cause of action."[42]  Kansas courts have also rejected physical effects such as diarrhea, nausea, trembling, weight gain, and sleep difficulties.  A federal court, applying Kansas law, rejected symptoms of difficult breathing, weakness, fatigue, headaches, gastrointestinal discomfort, sexual dysfunction, knee injury, respiratory infection, sleep disturbances, and "nerves" requiring a prescription for Paxil as insufficient to show physical injury.[43]

Here, Plaintiff argues that she has suffered extreme and persistent abdominal pain,

---

[39]Doc. 1 at 29.

[40]*Id.*

[41]*Reynolds v. Highland Manor, Inc.,* 24 Kan. App. 2d 859, 861 (1998).

[42]*Id.* (citing *Hopkins v. State*, 237 Kan. 601, 612–13 (1985)).

[43]*Holdren v. General Motors Corp.*, 31 F. Supp. 2d 1279, 1285–86 (D. Kan.1998).

directly resulting from the emotional distress caused by Defendants' negligence. She also alleges that she has had to seek medical attention for these pains. But this does not qualify as a physical injury under Kansas law. Rather, the pain appears to be akin to headaches, gastrointestinal discomfort, general physical upset, and other physical symptoms of emotional distress rejected in the precedent discussed above. Defendants' motion to dismiss Count VII is granted.

### G. Count VIII - Fraudulent Misrepresentation Claim.

Plaintiff next argues that Defendants intentionally misled her into removing Neill as her major professor, and, as she was unable to procure a replacement advisor, this misrepresentation led to her dismissal from the KSU Graduate School. Under Rule 9(b) of the Federal Rules of Civil Procedure, a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," with general allegations only allowed for "malice, intent, knowledge, and other conditions of a person's mind." Rule 9(b) applies to all claims of fraud or mistake, including fraudulent misrepresentation.[44] To survive a motion to dismiss, the party alleging fraud must "'set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[45] In other words, the alleging party must specify the "'who, what, where, and when of the alleged fraud.'"[46]

Here, Plaintiff has failed to plead fraudulent misrepresentation with the required

---

[44]*See Fischerman Surgical Instruments, LLC v. Tri-Anim Health Servs., Inc.*, No. 06-2082-KHV, 2007 WL 85666, at *2–3 (D. Kan. Mar. 21, 2007).

[45]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 982, 987 (10th Cir. 1992)).

[46]*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (quoting *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001)).

specificity.  Plaintiff alleged only that unspecified "Defendants" secretly added Neill's name to the advisor removal form and intentionally communicated to Plaintiff that only Wang would be removed as her major advisor.  Plaintiff does not allege the who, where, and when of the alleged fraud, as required by the federal rules.  Thus, the Court grants the motion to dismiss Count VIII.[47]

Generally, when a pleading is insufficient under Rule 9(b), a court should allow the offending party to amend its pleading to conform to the requirements of Rule 9(b), especially in the early stages of litigation.[48]  But, in this case, additional details are unlikely to develop these allegations into a meritorious claim.  Even if Plaintiff had provided additional detail, this Court would grant the motion to dismiss Count VIII on the merits.  Under Kansas law, "[f]raudulent misrepresentation involves an untrue statement of material fact, known to be untrue, made with the intent to deceive or with reckless disregard for the truth, and upon which another party justifiably relies to his or her detriment."[49]  Plaintiff alleges that she justifiably relied on Defendants' statement, and executed the document in which she unknowingly approved the removal of Wang and Neill.  Plaintiff also alleges that Defendants hurried Plaintiff into signing the approval form, without giving Plaintiff a meaningful opportunity to review the document. But these allegations do not show justifiable reliance; Plaintiff signed a document that clearly listed Neill in the "Professor(s) to be removed" column,[50] and her reliance on the statements of

---

[47]Fed. R. Civ. P. 12(f).

[48]*See Bowers v. Mortg. Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2011 WL 2149423, at *4 (D. Kan. June 1, 2011).

[49]*Smith v. Stephens*, 940 P.2d 68, 69–90 (Kan. App. 1997).

[50]Doc. 1 at 77.

22

other people that she was not removing Department Head Neil was not justifiable in light of the written document she signed.[51]

**H.  Counts IX and X - Common Law Civil Conspiracy and Civil Conspiracy in Violation of 42 U.S.C. § 1983 Claims.**

In Count IX, Plaintiff argues that Defendants engaged in an unlawful civil conspiracy under state law to achieve their ultimate goal of dismissing Plaintiff from her PhD program. Plaintiff also alleges that Defendants engaged in several unlawful overt acts in the course of their conspiracy, including denial of Plaintiff's substantive and procedural due process right and violation of Plaintiff's First Amendment right to free speech through retaliation; of these alleged overt acts, only the procedural due process claim remains.

In Count X, her final count, Plaintiff argues that Defendants engaged in illegal civil conspiracy under federal law to achieve their ultimate goal of dismissing Plaintiff from her PhD program, which deprived her of her right to free speech and ongoing education.

Both a state civil conspiracy claim and a federal civil conspiracy claim require a meeting of the minds— an agreement and concerted action amongst the defendants.[52]  For her state law claim, Plaintiff alleges that "Defendants Neill, Wang, Guikema, Crawford and Shanklin overtly conspired to participate in the unlawful acts described herein with the ultimate goal of removing Department Head Neill as Plaintiff's major advisor, and subsequently dismissing her from the KSU [Graduate Program]"[53] and that "[a]ll Defendants named herein were overtly involved in

---

[51]*See, e.g.*, *Zobrist v. Coal-X, Inc.*, 708 F.2d 1511, 1517 (10th Cir. 1983) (holding that a purchaser may not justifiably rely on a misrepresentation where falsity of the misrepresentation is palpable).

[52]*Stoldt v. City of Toronto*, 678 P.2d 153, 161 (Kan. 1984).

[53]Doc. 1 at 34.

the decision to dismiss Plaintiff from KSU."[54]  These are bare, conclusory allegations.  For her federal civil conspiracy claim, Plaintiff additionally alleges that "Defendants had a 'meeting of the minds' in the course of their action to dismiss Plaintiff Lee under false pretenses, as evidenced by Defendants' consistent references to conversations with each other as to the ultimate outcome of Plaintiff's status as a student and her planned dismissal; these references are overt and noticeable throughout the e-mails offered as Exhibits in this case."[55]  Again, these allegations are conclusory and lack the details that would allow this Court to deny Defendants' motion to dismiss this count.

The Tenth Circuit discussed the requirements for a Plaintiff to state a claim of civil conspiracy in a similar case:

> a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.[56]

In that case, the court noted that conclusory allegations did not suffice.  "We do not think it is reasonable to infer, for example, that because certain . . . faculty members met with certain administrators during the investigation, they were conspiring with one another."[57]  If such facts do not show a conspiracy under federal law, they also fail to show a meeting of the minds in furtherance of a conspiracy under state law.  In this case, Plaintiff has failed to allege sufficient facts to show an agreement and a concerted action to deny Plaintiff the procedural due process

---

[54]*Id.*

[55]*Id.* at 35.

[56]*Tonkovich*, 159 F.3d at 533.

[57]*Id.*

rights to which she was entitled. Thus, the Court will dismiss Counts IX and X.

   **I. Plaintiff's request for leave to amend the complaint**

   In her response, Plaintiff seeks leave to amend her Complaint in the event the Court grants Defendants' motion to dismiss in whole or in part. The Court declines to grant plaintiff leave to amend absent a properly filed and supported motion for leave to amend the Complaint.[58]


   **IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 12) is GRANTED with respect to Counts II, III, IV, V, VI, VII, VIII, IX, and X, and with respect to all claims against KSU and against the other defendants in their official capacities. It is granted in part and denied in part with respect to Count I.

   **IT IS SO ORDERED.**

Dated: June 7, 2013

                                                  S/ Julie A. Robinson
                                                JULIE A. ROBINSON
                                                UNITED STATES DISTRICT JUDGE

---

[58]*See* Fed. R. Civ. P. 15(a)(2); D. Kan. R. 15.1.