## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRACE LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      12-cv-2638-JAR |
| | ) |
| DR. CAROL W. SHANKLIN, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff Grace Lee filed a ten-count complaint against Kansas State University ("KSU"),

Dr. Carol W. Shanklin, Dr. James A. Guikema, Dr. Duane W. Crawford, Dr. James W. Neill,

Dr. Haiyan Wang, and Ms. Heather Reed ("Defendants"), seeking damages related to her

termination from a graduate teaching assistant ("GTA") position and from her graduate studies

in statistics at KSU.  Defendants filed a Motion to Dismiss,[1] pursuant to Fed. R. Civ. P. 12(b)(6)

and 12(b)(1), which the Court granted in part and denied in part.[2]  The Court dismissed all claims

against KSU and all claims against the remaining defendants in their official capacities.  The

Court also dismissed Counts II through X against Defendants in their individual capacities.

Thus, the only claim remaining is Plaintiff's procedural due process claim in Count I against

Defendants in their individual capacities.  Defendants Shanklin, Crawford, Wang and Reed

("Movants") filed a second Motion to Dismiss (Doc. 31), pursuant to Fed. R. Civ. P. 12(b)(6),

---

[1]Doc. 12.

[2]Doc. 21.

which is currently before the Court.[3]  Defendants Guikema and Neill do not join in the motion.

Movants argue that Plaintiff has failed to allege facts sufficient to state a claim against them

under Count I and that they are protected by qualified immunity.  The motion is fully briefed and

the Court is prepared to rule.  For the reasons set forth below, the Motion to Dismiss is granted.

## I.        Qualified Immunity

Movants argue that even if the Complaint alleges sufficient facts to state a claim, they are

entitled to qualified immunity.  Qualified immunity "protects government officials 'from liability

for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"[4]  "Qualified immunity

gives government officials breathing room to make reasonable but mistaken judgments," and

"protects 'all but the plainly incompetent or those who knowingly violate the law.'"[5]  Because

qualified immunity is the "norm" in private actions against public officials, there is a

presumption of immunity when the defense is raised.[6]  When a defendant claims qualified

---

[3]The Court notes that its previous decision did not address the issue raised in the current Motion to Dismiss—the viability of Count I with respect to each individual Movant.  In the previous motion to dismiss, Defendants argued with regard to Count I that Plaintiff lacked a property interest for purposes of her § 1983 claim, that Plaintiff was afforded due process because she was dismissed for academic reasons, and that "[t]here was no authority that would have put KSU Officials clearly on notice that Lee could not be dismissed from the Graduate School for failure to make satisfactory progress given her self-imposed lack of a major professor (or refusal to consider changing her research topic)."  Defendants' only argument as to each of the Defendant's personal participation was with respect to the conspiracy claim.  Therefore, the Court did not address the arguments raised in the instant Motion to Dismiss.  *See* Doc. 13 at 10–17, 24–25.  Even if it had, the law-of-the-case doctrine does not apply to rulings revisited before entry of a final judgment and unless a party is prejudiced by lack of notice and the opportunity to be heard on the new ruling, "district courts generally remain free to reconsider their earlier interlocutory orders."  *Stewart v. Beach*, Case No. 08-3295-JAR, 2011 WL 6740545, *3 (D. Kan. Dec. 22, 2011), *aff'd* 701 F.3d 1322 (10th Cir. 2012).

[4]*Stanton v. Sims*, 134 S. Ct. 3, *4 (2013) (citations omitted).

[5]*Id*. at *5 (citations omitted).

[6]*Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (citation omitted).

immunity, the plaintiff bears the "heavy two-part burden" of showing (1) the defendant's violation of a constitutional right; and (2) that the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable [official] would have known that his or her challenged conduct was illegal."[7]

First, as the Court stated in its June 7, 2013 Memorandum and Order, a graduate student has a constitutional right to due process before she can be deprived of her property interest in her continued enrollment and graduate education.[8]   Courts in the Tenth Circuit have consistently upheld a graduate student's property interest in her continued graduate education.[9]   However, the inquiry does not end there, and the Court must determine whether this right is clearly established, and a reasonable official would have known that the conduct alleged by Plaintiff was unconstitutional.

This part of the qualified immunity analysis can be considered along with the motion to dismiss the § 1983 claim for failure to state a claim.  "Often, § 1983 . . . liability and the defense of qualified immunity travel hand-in-hand, and when they do, we consider their substantive components together."[10]   The Tenth Circuit in *Dodds v. Richardson*, stated that "[b]ecause a plaintiff can neither recover under § 1983 from a government official nor overcome the official's

---

[7]*Martinez v. Carr*, 479 F.3d 1292, 1294–95 (10th Cir. 2007) (citations omitted).

[8]*See* Doc. 21 at 12–13; *see also Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Gasper v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) (holding that an individual's place in a post-secondary nursing program constitutes a protected property interest); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (graduate student had a property interest in his graduate education which entitled him to due process); *Gossett v. Okla. ex rel Bd. of Regents for Langston Univ.*, 245 F.3d 1172 (10th Cir. 2001) (nursing student had a property right in his nursing education and was entitled to due process under the U.S. Constitution); *Byrnes v. Johnson Cnty. Cmty. Coll.*, No. 10-2690-EFM-DJW, 2011 WL 166715, at *1–2 (D. Kan. Jan. 19, 2011) ("Defendants argue that Plaintiff has no constitutionally protected property interest in her post-secondary education, but the law is clearly otherwise.").

[9]*Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (citations omitted).

[10]*Pahls*, 718 F.3d at 1227.

assertion of qualified immunity without demonstrating that official violated his constitutional or statutory rights, the legal analysis required to surmount these separate obstacles is often related, if not identical."[11]  Therefore, the Court will address the Rule 12(b)(6) challenge and the qualified immunity arguments together under Count I below.

## II.      Rule 12(b)(6)

### A.      Legal Standard

Rule 12(b)(6) provides a vehicle for a party to challenge the legal sufficiency of a claim. The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[12]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[13]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[14]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[15]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a

---

[11]614 F.3d 1185, 1193–94 (10th Cir. 2010).

[12]Fed. R. Civ. P. 8(a).

[13]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[14]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[15]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

plaintiff must offer specific factual allegations to support each claim."[16]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[17]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[18]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[19]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[20]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21]

### B.    Factual Allegations

The Court's previous Memorandum and Order sets forth the factual allegations in detail, and the Court adopts those factual allegations for purposes of the instant Motion to Dismiss.[22]  In

---

[16]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[17]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[18]*Id.*

[19]*Id.* at 679.

[20]*Id.*

[21]*Id.* at 678.

[22]*See* Doc. 21 at 4–9.

addition, the Court construes the following facts alleged in Plaintiff's Complaint, in the light most favorable to Plaintiff.

Plaintiff Lee was a graduate student in the Department of Statistics at KSU, but was dismissed from the Department of Statistics, and, subsequently, from the KSU Graduate School. Plaintiff argues she was dismissed in retaliation for filing formal grievances against her former major professor, Dr. Haiyan Wang, and for reporting potential academic fraud on the part of a former KSU Statistics PhD student.

On October 5, 2011, Plaintiff filed a grievance with the Associate Vice President of the KSU Office of Research and Sponsored Programs and Associate Dean of the KSU Graduate School, Dr. James A. Guikema, against Wang, an associate professor within the Department of Statistics at KSU, requesting removal of Wang as her major professor and from the supervisory committee overseeing and advising Plaintiff in the pursuit of her PhD.  This grievance followed months of informal complaints by Plaintiff to the Head of the Department of Statistics at KSU, Dr. James W. Neill, with the complaints generating no official action.

In response to the grievance, no hearing was held as required by KSU Graduate School grievance policies, but instead Defendants settled on a compromise suggested by the Interim Associate Dean of the KSU College of Arts and Sciences, Dr. Joseph Aistrup.  Under the compromise solution, Neill assumed a "co-major professor" role with Wang, who requested to continue as Plaintiff's major professor.

Wang's abusive and unprofessional behavior toward Plaintiff continued unabated for several months, despite Neill's presence as co-major professor.  Following consultation with and the advice of the Associate Dean of the KSU Graduate School, Dr. Duane W. Crawford, Jr.,

Plaintiff filed another grievance against Wang on March 18, 2012.  The administration of the KSU Graduate School and the Department of Statistics, including Neill and Guikema, disregarded the grievance procedures set forth in the Graduate Handbook and proceeded without holding a hearing on Plaintiff's grievance.  Plaintiff's grievance was approved and Wang was removed from her role as Plaintiff's major professor and from Plaintiff's supervisory committee. Despite Plaintiff's repeated entreaties, Neill removed himself as Plaintiff's co-major professor on or about April 9, 2012, leaving Plaintiff without a major professor.

After Plaintiff's two major professors were removed, she was required to find another major professor in order to continue her studies.  On April 19, 2012, Neill informed Plaintiff that her summer GTA position was in jeopardy if she could not locate another major professor by April 27, 2012, because GTA positions were only awarded to students making satisfactory academic progress.  Plaintiff contacted every professor within the Department of Statistics in an attempt to locate another major professor, but was unable to secure a new major professor by April 27, 2012, due to the short time-frame, the complexity of her dissertation work and the high faculty turnover in the Statistics Department.  On or about April 27, 2012, Plaintiff was terminated from her summer GTA position.  Although the reason given for Plaintiff's termination was her lack of a major professor, many other graduate students within the Department of Statistics did not have major professors at that time.  The GTA position had been one of Plaintiff's only sources of financial aid as a graduate student.

After her dismissal from the GTA position, Plaintiff continued to seek a new major professor in the Statistics Department.  Numerous professors suggested that she might have to change to a new research topic or change to a new department in order to find a new major

professor.  On April 30, 2012, Crawford told Plaintiff that he didn't see any alternative to Plaintiff starting her doctoral program and research anew on another topic with another major professor, which she interpreted as a penalty for her grievances against Wang.[23]

On April 30, 2012, Plaintiff sent an email to the Dean of the KSU Graduate School— Dr. Carol Shanklin, and to Guikema and Crawford, recounting the difficulties Wang's prior students had experienced as a result of Wang's erratic behavior, and raising the idea that she was the victim of retaliation by Neill for daring to complain about conditions within the Department of Statistics and for having the temerity to file a grievance against Wang.[24]

On May 1, 2012, Guikema told Plaintiff by email that her chances of completing her PhD in the Statistics Department were "almost down to zero" and suggested Plaintiff should explore discussions with graduate programs outside of the Department of Statistics.[25]

On May 2, 2012, Plaintiff sent an email to Guikema and Crawford, asking for help and mentioning that some Department of Statistics faculty members were "not completely disinclined" to be Plaintiff's major advisor.[26]  Plaintiff reiterated in the email that she thought the adverse and disproportionate actions being taken against her by Defendants were the result of retaliation for filing grievances against Wang and the eventual removal of Wang as Plaintiff's major professor.[27]

---

[23]Complaint, Doc. 1 at ¶¶ 54–56.

[24]*Id.* at ¶¶ 57–59., Ex. H.

[25]*Id.* at ¶¶ 60–61.

[26]*Id.* at ¶¶ 64–66, Ex. J.

[27]*Id.* at ¶ 66.

On May 4, 2012, the Associate Dean and Director of Student Life at KSU, Heather Reed, requested a meeting with Plaintiff and asked Plaintiff not to have any contact with faculty or staff at the Department of Statistics or the Graduate School.[28]  When Plaintiff met with Reed and Guikema on May 7, 2012, Guikema confirmed that Plaintiff no longer had any chance for success in continuing her PhD in the Statistics Department.[29]  Guikema told Plaintiff that Plaintiff could ask faculty members of other Graduate School departments if she could be a student in their program, but stated that staying in the Department of Statistics was not an option, because Plaintiff did not have a major professor by the April 27, 2012 deadline.[30]  Guikema told Plaintiff that Plaintiff had approximately six weeks to be accepted into a different department within the KSU Graduate School or she would be dismissed from the Graduate School entirely.[31]  During the May 7, 2012 meeting, Reed informed Plaintiff that Plaintiff was not to have any further contact with the faculty of the Department of Statistics.[32]  Guikema emailed Plaintiff on May 7, 2012, following the meeting, to clarify his remarks at the meeting, stating that he had never said Plaintiff was dismissed from the Department of Statistics, only that it was likely that the Graduate School would receive a communication from the Department of Statistics recommending Plaintiff's dismissal from the Graduate School for not having a major professor.[33]

---

[28]*Id.* at ¶¶ 67–68.

[29]*Id.* at ¶ 70.

[30]*Id.* at ¶ 71–72.

[31]*Id.* at ¶ 74–75.

[32]*Id.* at ¶ 76.

[33]*Id.* at ¶¶ 77–79.

On May 9, 2012, Plaintiff received a letter from Neill informing her that she had been recommended for termination from the Statistics graduate program for failure to find a replacement professor.  The letter was authored by Neill and stated that "Dr. Haiyan Wang served as major professor until the student filed a grievance with the objective of removing Dr. Wang.  This request was approved by all concerned."[34]  Contrary to the terms of Neill's termination letter, several faculty members, including the academic progress committee members, objected to the dismissal of Plaintiff.[35]  Following Plaintiff's receipt of the letter, she asked a few faculty members of the Department of Statistics if they were aware that she had been dismissed from the graduate program, and on May 11, 2012, Plaintiff received a highly charged email from Guikema admonishing her for contacting them.[36]

On May 31, 2012, Plaintiff received a letter from Guikema informing Plaintiff that she was being dismissed from the KSU Graduate School for failure to make satisfactory progress, on the recommendation of the Statistics Department.[37]

Following inquiries with the Department of Statistics Graduate Program Director about the possibility of filing a petition for reinstatement, Plaintiff emailed Guikema about the possibility of being reinstated to the Department of Statistics pursuant to procedures set forth in the KSU Graduate Student Handbook.  Guikema told Plaintiff by email that any such petition was unlikely to succeed and asked Plaintiff to refrain from using highly accusatory statements

---

[34]*Id.* at ¶¶ 80–82, Ex. M.

[35]*Id*. at ¶ 83.

[36]*Id.* at ¶ 84, Ex. N.

[37]*Id.* at ¶¶ 85–86.

such as "I am a victim" and "punished in retaliation" because the accusations had not been proven nor substantiated in a grievance.

### III.    Count I - Procedural Due Process Claim under 42 U.S.C. § 1983

To succeed on a procedural due process claim, an individual must prove two elements: first, that she possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and second, that she was not "afforded an appropriate level of process."[38]  As indicated by the Court's qualified immunity analysis in both this motion and the Court's June 7, 2013 Memorandum and Order, Plaintiff had a protected property interest in her ongoing education.  Because Plaintiff possessed a constitutionally protected property interest such that the due process protections were applicable, the Court turns to the question of whether she successfully alleges that she was afforded an inappropriate level of process before she was deprived of that property interest.

Defendants argued in their previous motion to dismiss that Plaintiff was provided the minimal due process required for dismissal for academic reasons.  "When a school makes an ostensibly academic judgment about a student, the procedural requirements of the Due Process Clause are satisfied if the student is given prior notice of the deficiencies in his academic performance and if the challenged decision is 'careful and deliberate.'"[39]  However, this Court held that "[t]he question of whether the dismissal was academic or disciplinary is a fact question

---

[38]*Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254 (10th Cir. 2005) (quotation omitted).

[39]*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, (10th Cir. 2001) (citing *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85 (1978)).

11

that cannot be resolved on a motion to dismiss; the facts, as alleged by Plaintiff, suggest that the dismissal may have had some disciplinary aspect."[40]  The Supreme Court has held that:

> Since the issue first arose 50 years ago, state and lower federal courts have recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter.[41]

Where the decision is not academic, the requirement of a hearing, where a student could present his side of the factual issue, could "provide a meaningful hedge against erroneous action."[42]

The Supreme Court set forth the baseline of a student's procedural due process rights in *Goss v. Lopez*, finding that "[a]t the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing."[43]  The Tenth Circuit has considered whether a student's due process rights require procedural safeguards in addition to those provided for in *Goss*.[44]

In *Watson*, the Tenth Circuit applied the balancing test of *Mathews v. Eldridge*:

> Under *Mathews*, a court must balance three factors: (1) the private interest that will be affected by the official action, (2) the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the fiscal and

---

[40]Doc. 21 at 15–16.

[41]*Horowitz*, 435 U.S. at 87.

[42]*Id.* at 89.

[43]*Smith v. Barber*, 316 F. Supp. 2d 992, 1032 (D. Kan. 2004) (quoting *Goss v. Lopez*, 419 U.S. 565, 579 (1975)); *see also Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) ("An essential principle of due process is that a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (citation omitted).

[44]*Id.*

administrative burden, that the additional or substitute procedural requirements would entail.[45]

In Count I, Plaintiff alleges that Defendants violated her procedural due process rights by:

> a.  Failing to provide Plaintiff Lee with the proper disciplinary appeals; b.  Failing to afford Plaintiff a fair and reliable method for determining the factual foundation of Plaintiff's dismissal; c. Failing to advise Plaintiff of the grounds of the charges against her and the nature of the evidence against her; d.  Failing to give Plaintiff Lee an opportunity to be heard in her own defense; e. Failing to give Plaintiff Lee an opportunity to cross-examine witnesses in support of Defendants' position to dismiss Plaintiff from KSU; f.  Failing to afford Plaintiff Lee the opportunity to call witnesses; g.  Failing to allow Plaintiff Lee meaningful assistance of counsel prior to her dismissal; h.  Failing to make an administrative hearing record sufficient to permit meaningful judicial review; i.  Imposing a punishment that was not based on substantial evidence, and which is disproportional to the violation alleged; j.  Failing to appoint an impartial arbiter to preside over Plaintiff Lee's petition for reinstatement; k.  Failing to afford Plaintiff Lee a proper disciplinary appeal.[46]

Despite this long laundry list set forth in the Complaint, Plaintiff's Response to the Motion to Dismiss merely states that if a student's dismissal is for disciplinary reasons, due process requires that the student receive both notice and a hearing before the dismissal, and "[t]he notice and hearing do not have to be strictly formal, but their formality must reflect the severity of the circumstances and situation."[47]

---

[45]*Wastson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1240 (10th Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[46]Doc. 1 at 20–21.

[47]Doc. 42 at 8–9.

A plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited."[48]  Plaintiff has pointed to no authority establishing that she was due the process she sets forth in Count I.  In fact, the Court in *Watson* denied plaintiff's request to have the court order that students facing expulsion or long-term suspension be afforded "written notice specifying the charges, legal counsel, the presentation of evidence, the right to cross-examine witnesses, an impartial board, a transcript of the hearing, and independent review of the decision," noting that precedent indicates "that due process does not require all of these rights."[49] Furthermore, failure to follow state or local procedural requirements does not necessarily constitute a denial of due process; "the alleged violation itself must result in a procedure which itself falls short of standards derived from the Due Process Clause."[50]

"[T]he root requirement" of the Due Process Clause has been described by the Supreme Court as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest."[51]  The Court finds that, accepting Plaintiff's factual allegations as true, she has stated a sufficient claim that she was deprived of due process by being dismissed without a hearing.  However, that does not end the qualified immunity inquiry or the inquiry under Rule 12(b)(6).

---

[48]*Riggins*, 572 F.3d at 1111 (citation omitted).

[49]*Watson*, 242 F.3d at 1242–43 (citing *Gorman v. Univ. of R.I.*, 837 F.2d 7, 16 (1st Cir. 1988) (rejecting the argument that due process requires the right to counsel, to cross-examine witnesses, or to have a transcript of the hearing); *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir. 1988) (holding that due process does not require the right to cross-examine witnesses or that investigating officials be excluded from the deliberation process)).

[50]*Riggins*, 572 F.3d at 1109, n.3 (citation omitted).

[51]*Id.* at 1108 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)) (emphasis in original).

14

Movants argue that they are entitled to qualified immunity and that the § 1983 claim against them should be dismissed because Plaintiff has failed to allege specific facts showing that each of the Movants—Shankin, Crawford, Wang and Reed—personally participated in Plaintiff's dismissal from KSU.  In *Dodds v. Richardson*, the Tenth Circuit found that although the plaintiff had set forth facts that, if proven to be true, stated a violation of his constitutional rights, "that conclusion alone does not merit denying Defendant qualified immunity."[52]  The court noted that although there was no dispute that the defendant acted under color of state law as required by § 1983, there was a dispute as to whether defendant himself, rather than only his subordinates, violated the plaintiff's constitutional rights.[53]  The Tenth Circuit cited Justice Thomas' explanation:

> In conducting qualified immunity analysis . . . , courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated. Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights. For instance, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.[54]

A similar determination with respect to each individual defendant is necessary in addressing a motion to dismiss under Rule 12(b)(6) in a § 1983 case.  The elements necessary to establish a § 1983 violation "will vary with the constitutional provision at issue" but there is a requirement "that liability be predicated on a violation traceable to a defendant-officials's 'own

---

[52]*Dodds v. Richardson*, 614 F.3d 1185, 1193 (10th Cir. 2010).

[53]*Id.* at 1194, n.1.

[54]*Id.* at 1194 (quoting *Hope v. Pelzer*, 536 U.S. 730, 751 n. 9 (2002) (Thomas, J., dissenting)).

15

individual actions.'"[55]  In *Ashcroft v. Iqbal*, the Supreme Court held that the complaint was

insufficient to state a claim against Attorney General Ashcroft and FBI Director Mueller, noting

that while plaintiff's "account of his prison ordeal could, if proved, demonstrate unconstitutional

misconduct by some governmental actors," the issue on the motion to dismiss was a narrower

one: did plaintiff "plead factual matter that, if taken as true, states a claim that [Ashcroft and

Mueller] deprived him of his clearly established constitutional rights."[56]  Likewise , the Tenth

Circuit has held that:

> "The *Twombly* standard may have a greater bite" in the context of
> a § 1983 claim against individual government actors, because
> "they typically include complex claims against multiple
> defendants." . . . "[I]t is particularly important in such
> circumstances that the complaint make clear exactly *who* is alleged
> to have done *what* to *whom*, to provide each individual with fair
> notice as to the basis of the claims against him or her, as
> distinguished from collective allegations against the state."[57]

"In order for liability to arise under § 1983, a defendant's direct personal responsibility for the

claimed deprivation of a constitutional right must be established."[58]

   In addition to being governed by constitutional law, Plaintiff's claim is also governed by

§ 1983 itself, which states, in part:  "Every person who . . . *subjects, or causes to be subjected*,

any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the

---

[55]*Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

[56]556 U.S. 662, 666 (2009) (a *Bivens* suit to which the Court analogized a § 1983 action).

[57]*Kan. Penn Gaming, LLC, v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (quoting *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)) (internal citations omitted, emphasis in original).

[58]*Id.* at 1221 (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006)).

16

Constitution and laws . . . shall be liable to the party injured . . . ."[59]  Thus, there is an element of causation and "a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation."[60]

The Court must conduct a differentiated analysis and Plaintiff must establish that *each* defendant caused her to be subjected to a violation of her due process rights.[61]  In *Tonkovitch*, the Tenth Circuit analyzed each defendant's conduct separately to determine whether the plaintiff had "pointed to any clearly established law that stands for the proposition that the sorts of actions taken by [that defendant] might form the basis of a procedural due process claim."[62]

Plaintiff has failed to allege that each of the Movants personally participated in her dismissal.  Rather, she alleges that the Movants either met with her or emailed her in an attempt to assist or advise her.  Giving advice upon request and meeting to discuss alternatives are not unconstitutional conduct. Crawford met with Plaintiff and responded to a couple of her emails with an email.  Reed sent Plaintiff an email requesting a meeting with her and Guikema and asking her not to contact faculty or staff at the Statistics Department in the meantime.  Reed's email was sent on Friday, May 4, 2012, asking her to refrain from contacting staff in the Statistics Department in the meantime until her meeting on Monday morning.  This email was sent after the April 27 deadline Plaintiff was given to find a new major professor.

---

[59]*Tonkovitch v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) (quoting 42 U.S.C. § 1983) (emphasis in original).

[60]*Id.*

[61]*Pahls*, 718 F.3d at 1231.

[62]*Tonkovitch*, 159 F.3d at 519.

There are no allegations of conduct by Wang after Plaintiff succeeded in having her removed as major professor and as a member of the supervisory committee overseeing and advising Plaintiff on the pursuit of her PhD.  Plaintiff suggests in her response that Wang was on the graduate student progress committee and that Wang had the ability to influence decisions made by the Department of Statistics.  However, there is nothing in the Complaint alleging that Wang participated in Plaintiff's dismissal.

Plaintiff has also failed to allege that any of the Movants were supervisors that were responsible for a policy that caused her due process violation.  While government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*, government officials may be held responsible for constitutional violations under a theory of supervisory liability.[63]  A plaintiff may succeed in a § 1983 claim against a defendant-supervisor by demonstrating:

> (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.[64]

Plaintiff has failed to identify any specific policies over which a particular Movant possessed responsibility that led to the alleged constitutional violation.[65]

---

[63]*Pahls*, 718 F.3d at 1225 (citations omitted).

[64]*Id.* (quoting *Dodds*, 614 F.3d at 1199).

[65]*Id.* at 1226 (citing *Dodds*, 614 F.3d at 1203–04 (holding that evidence showed Defendant "may have deliberately enforced or actively maintained the [unconstitutional] policies") and *Brown v. Montoya*, 662 F.3d 1152, 1165–66 (10th Cir. 2011) (ruling that complaint failed to state supervisory-liability claim under § 1983 because it failed to connect defendant to the allegedly unconstitutional policy)).

18

Plaintiff's reference in Count I to "Defendants," "KSU" and "KSU Graduate School's Administration" is insufficient. "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights."[66]

Although Plaintiff argues that some of the Movants participated in the denial of her due process rights by failing to hold a hearing, it was the act of dismissing Plaintiff that precluded the opportunity for a hearing before deprivation of her property interest.[67] Plaintiff alleges in Count I that the dismissal decisions were unilateral. On May 9, 2013, pursuant to a letter signed by Neill, the Department of Statistics Graduate Student Progress Committee recommended Plaintiff's dismissal from the Statistics graduate program "based on her failure to find a replacement major professor to supervise her PhD research."[68] In a letter signed by Guikema, this recommendation was accepted by the Graduate School on or about May 31, 2012.[69] Plaintiff alleges in Count I that:

> The decision to dismiss Plaintiff Lee was not made by an impartial decision maker. Instead, the Department Head of the Department of Statistics unilaterally made the decision. The Associate Vice President of the Office of Research and Sponsored Programs

---

[66]*Pahls*, 718 F.3d at 1225 (citing *Tonkovich*, 159 F.3d at 532–33; and *Brown*, 662 F.3d at 1165 ("The Complaint refers to actions of 'Defendants,' but that is not sufficient to show how Secretary Williams 'might be individually liable for deprivation of [Mr. Brown's] constitutional rights.'")).

[67]*See Riggins*, 572 F.3d at 1108 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[T]he root requirement" of the Due Process Clause has been described by the Supreme Court as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.")).

[68]Doc. 1,Ex. M.

[69]Doc. 1, Ex. O.

> ratified said decision.  Both of these decision makers were and
> continue to be biased.[70]

These two decision-makers—Neill and Guikema—have not moved for dismissal and remain as defendants in this case.

Plaintiff also argues that her unconstitutional dismissal was not the result of a singular act by Neill dismissing her from the Department of Statistics, after which Guikema also engaged in a singular act of dismissing Plaintiff from the Graduate School.  Rather, Plaintiff argues that each of the Movants "were personally involved in a *process* that ultimately resulted in Plaintiff's dismissal."[71]  However, this Court has already rejected as conclusory and insufficient the conspiracy claims against all the Defendants.[72]  Plaintiff cannot resurrect her conspiracy claim by alleging that the individual Movants were involved in a "process" that ultimately resulted in Plaintiff's dismissal.  Thus, a plaintiff must show that "clearly established law would advise reasonable decisionmakers that the [ ] process *and their role in it*" as alleged "transgressed clearly established constitutional rights."[73]  *Iqbal* makes it clear that in order to state a sufficient § 1983 claim, the Plaintiff must allege that an individual government official through his or her own actions violated a person's civil rights.[74]

To make out a viable § 1983 claim and to overcome Movants' assertions of qualified immunity, Plaintiff "must establish that each defendant—whether by direct participation or by

---

[70]Doc. 1 at ¶ 125.

[71]Doc. 42 at 16–17 (emphasis in original).

[72]Doc. 21 at 23–25.

[73]*See Riggins*, 572 F.3d at 1115 (citations omitted) (emphasis added).

[74]*Iqbal*, 556 U.S. at 676–77.

virtue of a policy over which he possessed supervisory responsibility—caused a violation of [P]laintiff's clearly established constitutional rights."[75]  The Complaint fails to allege unconstitutional conduct by the Movants.  Plaintiff has failed to establish that each of the Movants caused a violation of her clearly established constitutional rights.  Failure to make such a showing dooms both her § 1983 cause of action against the Movants and entitles the Movants to qualified immunity.  The Court finds that the Motion to Dismiss should be granted.

The Magistrate Judge granted the Defendants' Motion to Stay Discovery and Other Rule 26 Activities pending a ruling on the Motion to Dismiss.[76]  In light of this Court's ruling on the Motion to Dismiss, the stay shall be lifted as to the remaining two defendants, Neill and Guikema.

**IT IS THEREFORE ORDERED BY THE COURT** that the Motion to Dismiss (Doc. 31) is **GRANTED.**

**IT IS FURTHER ORDERED BY THE COURT** that the stay of discovery and other Rule 26 activities shall be **LIFTED**.

**IT IS SO ORDERED.**

Dated: August 20, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

[75]*Pahls*, 718 F.3d at 1228.

[76]Doc. 54.