FILED
United States Court of Appeals
Tenth Circuit

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

April 22, 2016

Elisabeth A. Shumaker
Clerk of Court

GRACE LEE,

     Plaintiff - Appellant,

v.

JAMES A. GUIKEMA; JAMES W.
NEILL, in their individual and official
capacities,

     Defendants - Appellees,

and

KANSAS STATE UNIVERSITY; CAROL
W. SHANKLIN; DUANE W.
CRAWFORD; HAIYAN WANG;
HEATHER M. REED,

     Defendants.

No. 15-3189
(D.C. No. 2:12-CV-02638-JAR-TJJ)
(D. Kan.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **KELLY**, **PORFILIO**, and **BALDOCK**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Grace Lee, a former graduate student at Kansas State University (KSU), appeals pro se from a district court order that found her 42 U.S.C. § 1983 due-process claim against Drs. James A. Guikema and James W. Neill barred by qualified immunity. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Lee was enrolled in the doctoral program at KSU's statistics department and worked as a graduate teaching assistant. To obtain a Ph.D., Lee needed an advisor "to supervise [her] research on [a] chosen dissertation topic." R., Vol. I at 718. The topic "is often related to the [advisor's] area of research," and because the advisor expends time and provides expertise in the student's preparation of the dissertation, "the topic remain[s] with the [advisor] if sufficient progress is not being made by the student." *Id.* at 662. Lee's advisor was Dr. Haiyan Wang, the "only faculty member in the [s]tatistics [d]epartment whose expertise involved Lee's chosen topic, which involved an area of [s]tatistics research that was at the that time on the cutting edge, specialized, complex and narrow." *Id.* at 665.

In July 2011, Lee asked Dr. Neill, the department head, to remove Dr. Wang as her advisor, claiming that she was "irresponsible for her advisory duty." *Id.*, Vol. II at 109. Dr. Neill met with Lee and gave her four options on how to proceed: (1) keep working with Dr. Wang; (2) pursue a new research topic under a different advisor; (3) file a grievance; or (4) "[t]erminate from the [s]tatistics graduate program." *Id.*, Vol. I at 689. On October 2, Lee acknowledged in an email that she "need[ed] a supporting major advisor so that [she] [could] move [her] academic progress forward," and that she "would

2

never be ready for a preliminary [Ph.D.] exam" without an advisor. *Id.* at 690. And she quoted a portion of the statistics department handbook that provided: "students who fail to make satisfactory progress [toward degree completion] . . . will not only lose departmental support but will be recommended for dismissal from the Graduate School." *Id.* Nevertheless, Lee decided to seek Dr. Wang's removal and she submitted a grievance letter to Dr. Guikema, the graduate school's associate dean, complaining that "Dr. Wang ha[d] lost her credibility to act as [her] major advisor." *Id.*, Vol. II at 118.

Lee initially accepted a compromise situation in which Dr. Neill agreed "to serve as a mediator between Lee and Dr. Wang so" Lee could keep working on her chosen dissertation topic. *Id.*, Vol. I at 724. But despite Dr. Neill's intervention, Lee remained dissatisfied with Dr. Wang and she filed another grievance. On April 4, 2012, Lee's grievance was approved and Dr. Wang was removed as her advisor.

On April 9, Dr. Neill notified Lee that she was "free to find another professor within the department" to continue her dissertation work, but she had to keep him informed so he could "track [her] academic progress." *Id.* at 697. Lee contacted all twelve of the remaining statistics faculty members, but none agreed to advise her on the dissertation topic she had with Dr. Wang, and Lee refused to change her research topic.

On April 19, Dr. Neill told Lee that if she wanted to be considered for a graduate teaching-assistant position, he needed to know by April 27 whether she had found a new advisor. Dr. Neill explained that "[a]cademic progress is necessary in order to be considered for such support by the department." *Id.* Lee failed to meet the deadline and she lost her teaching-assistant position.

On April 30, Lee complained to Dr. Guikema that Dr. Neill had cancelled her teaching-assistant position and was "forcing" her to select a new Ph.D. research topic.  *Id.* at 71.  She acknowledged that she was facing "termination from the program."  *Id.*  In response, Dr. Guikema advised Lee to stay focused on her goal of obtaining a Ph.D.  He noted that while her options for success in the statistics department were "almost down to zero," he suggested that she "explore discussions with related graduate programs."  *Id.* at 72.

On May 2, KSU's director of student life received a report that Lee had been "yelling and disruptive in the Graduate School office."  *Id.*, Vol. II at 512.  Dr. Neill informed the statistics faculty of the report and surmised that Lee would be "terminat[ed] from at least this program."  *Id.* at 237.  KSU's critical incident response team (CIRT) met and determined, however, that Lee did not appear to be dangerous and only "needed to be warned about her disruptive conduct."  *Id.* at 512.

On May 7, Dr. Guikema met with Lee and told her that the statistics department would likely be recommending her dismissal from the KSU graduate program because she had not found a replacement advisor.  But Dr. Guikema offered not to process that recommendation for six weeks, so she could pursue graduate opportunities in other departments, such as mathematics and computer science.  On May 9, Dr. Neill and the graduate-student progress committee submitted the termination recommendation, "based on [Lee's] failure to find a replacement major professor to supervise her PhD research."  *Id.*, Vol. I at 80.  Dr. Guikema forwarded it to Lee and reminded her to "keep [her] eye on the prize" by finding a graduate program in which she could succeed.  *Id.* at 711.

As of May 30, Lee had not sought admission to any other department at KSU, and she notified the graduate school that she had decided not to transfer.  The next day, Dr. Guikema processed the recommendation from the statistics department and dismissed Lee from the graduate program.

After unsuccessfully seeking reinstatement, Lee sued KSU, Dr. Wang, and various school administrators.  The district court dismissed all of Lee's claims except her procedural due-process claim against Drs. Guikema and Neill.  As for that claim, the district court found that qualified immunity applied, and it granted them summary judgment.

## DISCUSSION

## I. Standards of Review

We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Lee.  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 766 (10th Cir. 2013).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To defeat summary judgment based on qualified immunity, a plaintiff must "show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).  We liberally construe Lee's pro se filings, but we do not act as her "attorney in constructing arguments and searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

## II. Procedural Due Process

"In order to prevail on her procedural due process claim, [Lee] must show that she possessed a protected property interest in" her graduate position at KSU. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 (10th Cir. 2004). Courts ordinarily "look to existing rules or understandings that stem from an independent source such as state law to define the dimensions of protected property interests." *Setliff v. Mem. Hosp. of Sheridan Cty.*, 850 F.2d 1384, 1395 (10th Cir. 1988) (internal quotation marks omitted). Lee does not address the contours of her purported property interest, and Drs. Guikema and Neill assume for the sake of argument that she has such an interest. "[A]n individual's place in a post-secondary . . . program" can qualify as a protected interest. *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986). But we need not resolve whether Kansas law specifically establishes a property interest in continued enrollment as a doctoral student, given that Lee has "failed to identify any clearly established law requiring more process than she received before [KSU] dismissed her." *Trotter v. Regents of Univ. of N.M.*, 219 F.3d 1179, 1184 (10th Cir. 2000); *see also Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004) (assuming, without deciding, that student had a right to continued enrollment in a doctoral program).

The adequacy of process is "a matter of federal constitutional law." *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003). "When a school makes an ostensibly academic judgment about a student, the procedural requirements of the Due Process Clause are satisfied if the student is given prior notice of the deficiencies in [her] academic performance and if the challenged decision is careful and deliberate." *Gossett*

*v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001)

(internal quotation marks omitted).

Lee contends she is entitled to a more stringent standard because her dismissal was disciplinary, rather than academic. *See Harris*, 798 F.2d at 423 ("The Supreme Court has emphasized that less stringent procedural requirements attach when a school makes an academic judgment about a student than when it takes disciplinary action."). To support this characterization, she points to (1) Dr. Neill's impression that as a result of the May 2 incident report, Lee would be dismissed; and (2) her academic achievements at KSU, including a 3.95 grade-point average and several academic scholarships. But neither matter shows that Lee's dismissal was disciplinary. Dr. Neill's impression turned out to be incorrect, as the CIRT team concluded she was not dangerous and needed only a warning. And despite Lee's academic achievements, she knew that academic progress toward a Ph.D. was not possible without an advisor, and she failed to obtain an advisor. Every communication in the record references that failure as the reason for Lee's dismissal. No reasonable jury could find that Lee's dismissal was for a disciplinary purpose.

Accordingly, we must consider whether Lee's dismissal was preceded by notice and "a careful and deliberate evaluation of h[er] academic ability." *Gossett*, 245 F.3d at 1181. Lee argues she had no notice that the lack of an advisor would result in her dismissal from the statistics program. But she knew at least as early as September 2011 that an advisor was critical to her academic progress and that one of the alternatives to finding a replacement for Dr. Wang was "[t]erminat[ion] from the [s]tatistics graduate

7

program." R., Vol. I at 663-64. Further, in an October 2011 email, Lee reproduced a portion of the statistics department handbook that prescribed dismissal for students who failed to satisfactorily progress towards degree completion. After Dr. Wang was removed on April 4, 2012, Dr. Neill twice told Lee (on April 9 and 19) that if she wished to pursue the option of finding a new advisor, she would have to keep him informed so he could track her academic progress. And when Lee complained to Dr. Guikema on April 30 about losing her teaching-assistant position and having to consider a new research topic, she admitted she was facing "termination from the program." *Id.* at 71. Moreover, Dr. Guikema advised Lee on May 1 that her options for a statistics Ph.D. were "almost down to zero," *id.* at 72, and on May 7 he told her to expect a dismissal recommendation, *id.* at 78. Given these circumstances, Lee cannot complain she lacked notice when the statistics department finally recommended her dismissal on May 9 or when that recommendation was processed on May 31.

Lee further contends that a jury could find her dismissal was arbitrary, rather than careful and deliberate, because (1) she had limited time to find an advisor; (2) other graduate students were not subject to the same constraints; and (3) she was not given a hearing. We disagree.

In regard to the timing of Lee's dismissal, Dr. Neill notified her that Dr. Wang had been removed and that she was free to find another statistics advisor on April 9, 2012—a full month before he joined with the progress committee in recommending her dismissal. Dr. Guikema encouraged Lee to explore options in other departments and delayed processing the dismissal recommendation until May 31. Lee does not explain how either

8

of these timeframes was insufficient to obtain an advisor.  She concedes that she was able to contact "all twelve of the other [statistics] faculty members," Aplt. Opening Br. at 6, and that she had decided not to pursue a new research topic with one of those faculty members or to seek admission to a different program, R., Vol. I at 717, 720.[1]

Lee's claim of disparate treatment also fails.  The evidence she cites is not probative, as it does not indicate whether other students were similarly situated to her. *See, e.g.*, *id.*, Vol. II at 313 (email from another KSU student stating only that she had not begun looking for an advisor).  Moreover, statements from other students addressing whether they have been looking for an advisor and for how long are inadmissible hearsay.  *See Wright–Simmons v. City of Okla.*, 155 F.3d 1264, 1268 (10th Cir. 1998) ("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." (internal quotation marks omitted)).

Finally, in the context of dismissals for academic reasons, a hearing is not required to satisfy due process.  *See Trotter*, 219 F.3d at 1185.

No reasonable jury could find that the decision to dismiss Lee was anything but careful, deliberate, and preceded by sufficient notice.  Accordingly, Drs. Guikema and Neill were entitled to qualified immunity from suit and summary judgment on Lee's due-process claim.

---

[1] Lee also claims that Dr. Neill limited the pool of potential new statistics advisors to tenured faculty members.  The record indicates, however, that he merely suggested "an experienced advisor [to] expedite Lee's dissertation research on a new research topic."  R., Vol. I at 666.

CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge